UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LISA LONG,<br><br>        Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN, Commissioner of Social Security,<br><br>        Defendant. | Case No. 13-cv-05716-SI<br><br>**ORDER REVERSING AND REMANDING CASE FOR FURTHER ADMINISTRATIVE PROCEEDINGS** |

Now before the Court is plaintiff's appeal of a final decision by the Commissioner of Social Security denying plaintiff benefits. Plaintiff has filed a motion for summary judgment and, in the alternative, seeks remand of this matter for a new hearing. Conceding reversible error, defendant has filed a cross-motion for remand. For the reasons stated below, the Court REVERSES the decision of the Commissioner and REMANDS this case pursuant to sentence four of 42 U.S.C. § 42(g) for further proceedings consistent with this Order.

## BACKGROUND

By the time of the administrative hearing, plaintiff Lisa Long was a forty-four year old woman with a high school education. Administrative Record ("AR") at 16. Her past work experience includes employment as a bakery worker, and as a hair stylist. *Id.* at 65. She has not engaged in substantial gainful activity since June 1, 2009. *Id.* at 14. Plaintiff asserts that she is disabled due to fibromyalgia and arthritis in her hands, spine, and back. *Id.* at 176.

On November 30, 2010, plaintiff filed an application for disability insurance benefits under Title II of the Social Security Act. *Id.* at 12. The Social Security Administration denied the claim initially and upon reconsideration. *Id.* at 79, 83. Plaintiff thereafter requested a hearing before an

1   administrative law judge. *See id.* at 95. The hearing was held on April 19, 2012. *Id.* at 102. The
2   ALJ issued a decision on September 7, 2012, finding that plaintiff was not disabled and denying
3   her claim for disability benefits. *Id.* at 9.

4   On October 30, 2013, the Appeals Council denied plaintiff's request for review of the
5   ALJ's decision. *Id.* at 1-5. Plaintiff then filed this action for judicial review of the Commissioner's
6   final decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Compl. ¶ 3. Plaintiff has moved
7   for summary judgment, and asks this Court to reverse and remand the ALJ's decision with an order
8   to pay benefits, or, in the alternative, to remand for further proceedings. Compl. ¶ 3; Pl.'s Mot.
9   Summ. J. ("Pl.'s Mot.") at 25. Conceding that the ALJ committed reversible error, defendant ("the
10  Commissioner") has filed a cross-motion for remand for further proceedings, but opposes
11  plaintiff's request for an order to pay benefits. Def.'s Cross-Mot. Remand ("Def.'s Cross-Mot.") at
12  6.

## ALJ'S DECISION

15  In determining plaintiff's disability status, the ALJ applied the five-step disability analysis
16  in accordance with 20 C.F.R. § 416.920(a)(4). AR at 12-20. At step one, the ALJ determined that
17  plaintiff had not engaged in substantial gainful activity since June 1, 2009, the alleged onset date
18  of plaintiff's disability. *Id.* at 14. At the second step, the ALJ found that plaintiff suffered severe
19  impairment from fibromyalgia, arthritis of the hands, and impairment of the neck, back, and wrist.
20  *Id.* At step three, the ALJ found that there was "no persuasive opinion or other evidence"
21  indicating that plaintiff's impairments meet or equal the severity of any impairment in the Listing
22  of Impairments. *Id.* at 15.

23  Before proceeding to step four, the ALJ determined plaintiff's residual functional capacity
24  ("RFC"). *Id.* In assessing plaintiff's RFC, the ALJ evaluated plaintiff's testimony, the medical
25  evidence, and weighed the opinions of plaintiff's treating, examining, and non-examining
26  physicians. *Id.* at 15-19. Specifically, the ALJ gave little weight to the opinions of plaintiff's
27  treating physicians, Drs. Besana and Chen. *Id.* at 17-18. She gave reduced weight to the opinions
28  of non-examining physicians, Drs. Spellman and Mauro, and to the opinion of Dr. Lazarus,

plaintiff's chiropractor. *Id*. at 16-17.  The ALJ gave great weight only to the opinion of Dr. Flavin, a consultative examiner. *Id.* at 16.  As to plaintiff's own testimony, the ALJ determined that the plaintiff's medically determinable impairments could cause the alleged symptoms, but found that plaintiff's testimony regarding the severity of the symptoms was not fully credible. *Id.* at 18.

In light of the above assessment, the ALJ found plaintiff had the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a),[1] with the following limitations: "no climbing of ladders, ropes, or scaffolds; occasional climbing of ramps and stairs; occasional balancing, stooping, kneeling, crouching, and crawling; frequent bilateral handling and fingering; and no work around hazards." *Id.*

Continuing to step four, the ALJ found that plaintiff's impairments prevented plaintiff from returning to her past work as a hairdresser. *Id.* at 19.  At step five, the ALJ relied on testimony from a vocational expert (VE) in finding that plaintiff could perform the jobs of "cashier II" (excluding positions that required light exertion), and "systems surveillance monitor." *Id.* at 20. Because the ALJ found that plaintiff was able to make a successful adjustment to these jobs that "exist in significant numbers in the national economy," she determined that a finding of "not disabled" was appropriate. *Id.*

## LEGAL STANDARD

### I.   Standard of Review

The Social Security Act authorizes judicial review of final decisions made by the Commissioner. 42 U.S.C. § 405(g) (2001).  Here, the decision of the ALJ stands as the final

---

[1] 20 C.F.R. § 404.1567 provides that the term "sedentary work" has the meaning given to it in the Dictionary of Occupational Titles (DOT).  The DOT defines sedentary work as:

> Exerting up to 10 pounds of force occasionally (Occasionally: . . . up to 1/3 of the time) and/or a negligible amount of force frequently (Frequently: . . . from 1/3 to 2/3 of the time) to lift, carry, push, pull, or otherwise move objects . . . . Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met.

2 Dictionary of Occupational Titles 1013 (1991).

1  decision of the Commissioner because the Appeals Council declined review.  20 C.F.R.
2  § 416.1481 (2001).  The Court may enter a judgment affirming, modifying or reversing the
3  decision of the Commissioner, with or without remanding the cause for a rehearing.  42 U.S.C.
4  § 405(g).

5        Factual findings of the Commissioner are conclusive if supported by substantial evidence.
6  *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2001).  The Court may set
7  aside the Commissioner's final decision when that decision is based on legal error or where the
8  findings of fact are not supported by substantial evidence in the record taken as a whole.  *Tackett*
9  *v. Apfel*, 180 F.3d 1094, 1097–98 (9th Cir. 1999).  Substantial evidence is "more than a mere
10  scintilla but less than a preponderance."  *Id.* at 1098.  Substantial evidence means "such relevant
11  evidence as a reasonable mind might accept as adequate to support a conclusion."  *Molina v.*
12  *Astrue*, 674 F.3d 1104, 1110 (2012) (internal quotations omitted).  To determine whether
13  substantial evidence exists, the Court must consider the record as a whole, weighing both evidence
14  that supports and evidence that detracts from the Commissioner's conclusion.  *Tackett*, 180 F.3d at
15  1098.  "Where evidence is susceptible to more than one rational interpretation," the ALJ's decision
16  should be upheld.  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

18  **II.   Disability Benefits**

19        A claimant is "disabled" under the Social Security Act if: (1) the claimant "is unable to
20  engage in any substantial gainful activity by reason of any medically determinable physical or
21  mental impairment which can be expected to result in death or which has lasted or can be expected
22  to last for a continuous period of not less than twelve months," and (2) the impairment is "of such
23  severity that he is not only unable to do his previous work but cannot, considering his age,
24  education, and work experience, engage in any other kind of substantial gainful work which exists
25  in the national economy."  42 U.S.C. §§ 1382c(a)(3)(A)-(B).  The ALJ evaluates disability cases
26  using a five-step evaluation process established by the Social Security Administration.  20 C.F.R.
27  § 404.1520*; Ludwig v. Astrue*, 681 F.3d 1047, 1048 n. 1 (9th Cir. 2012).
28        In the first step, the claimant must establish that he or she is not engaged in substantial

4

1    gainful activity. Substantial gainful activity is any work that involves significant mental or
2    physical activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). If the ALJ finds that the claimant has
3    engaged in substantial gainful activity, the claimant is not disabled; however, if the ALJ finds that
4    the claimant has not done so, the ALJ will proceed to step two.

5    In the second step, the ALJ must determine whether the claimant has an impairment or
6    combination of impairments that is preventing him or her from performing substantial gainful
7    activity. *Id.* § 404.1520(a)(4)(I)-(ii). In order for an impairment to be severe, it must significantly
8    limit an individual's ability to perform basic work activities. An impairment must have lasted or
9    be expected to last twelve months in order to be considered severe. *Id.* § 404.1509. If the ALJ
10   does not find the claimant's impairment or combination of impairments to be severe at this stage,
11   the claimant is not disabled. If the ALJ determines that the claimant's impairment or combination
12   of impairments is severe, the ALJ will proceed to step three.

13   In the third step, the claimant must establish that his or her impairment meets or equals an
14   impairment included in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.
15   *Id.* § 404.1520(a)(4)(iii). The claimant is disabled if his or her impairment meets or medically
16   equals the criteria of a listed impairment. *Garrison v. Colvin*, 759 F.3d 995, 1010-11 (9th Cir.
17   2014). If the claimant's impairment does not meet or equal the criteria of a Listing, the evaluation
18   continues. 20 C.F.R. § 404.1520(a)(4)(iv).

19   Before reaching the fourth step, the ALJ must determine the claimant's RFC. *Id.*
20   § 416.920(e). The RFC measures the claimant's ability to meet the physical, mental, sensory, and
21   other requirements of work despite his or her limitations. *Id.* § 416.945(a)(4). To determine the
22   RFC, the ALJ considers the impact of the claimant's symptoms on his or her ability to work. The
23   ALJ will evaluate all the claimant's symptoms and the extent to which these symptoms are
24   consistent with evidence in the record. *Id.* § 416.929(a). The evidence can include the claimant's
25   own statements about his or her symptoms, but such statements must be adequately supported by
26   the record in order to establish a disability. *Id.* In order to determine whether the claimant's
27   statements are adequately supported, the ALJ must first determine whether the claimant has a
28   medical impairment that could reasonably be expected to produce his or her symptoms, and then

5

must evaluate the intensity and persistence of the claimant's symptoms. *Id.* When evaluating intensity and persistence, the ALJ must consider all of the available evidence, including the claimant's medical history, objective medical evidence, and statements about how the claimant's symptoms affect him or her. *Id.* The ALJ cannot reject statements about the intensity and persistence of symptoms solely because no objective medical evidence substantiates the statements. *Id.* § 416.929(c)(2). The ALJ must also consider factors relevant to the claimant's symptoms, such as the claimant's daily activities, the claimant's medications and treatment, any other measures the claimant uses to alleviate symptoms, precipitating and aggravating factors, and any other factors relevant to the claimant's limited capacity for work due to his or her symptoms. *Id.* § 416.929(c)(3)(I)-(vi).

At the fourth step, the ALJ must determine whether, in light of the claimant's RFC, he or she can perform previous work. *Id.* § 404.1520(e). If the ALJ determines that the claimant has such capacity, the claimant is not disabled. If the claimant cannot perform past relevant work or has no past relevant work, the ALJ proceeds to the fifth step.

The burden of proof is on the claimant in the first four steps; if he or she fails to meet the burden in steps one, two, three, or four, the claimant is "not disabled." *Garrison*, 759 F.3d at 1011. The burden shifts to the Commissioner in step five. In the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine whether the claimant is able to do any other work, and also must determine whether there are a significant number of these jobs in the national economy. 20 C.F.R. § 404.1520(a)(4)(v); *Garrison*, 759 F.3d at 1011. If the Commissioner fails to establish that there is a sufficient number of jobs available that the claimant can perform, the claimant is "disabled." *Id.* If the Commissioner shows that the claimant can make an adjustment to other work in the national economy, the claimant is not disabled. *Id.*

**DISCUSSION**

Plaintiff claims that the ALJ made several errors in assessing her RFC. Pl.'s Mot. at 8. First, she alleges that the ALJ erred in failing to incorporate the limitations assessed by Drs. Flavin, Besana, and Cheng in the RFC determination, and that the ALJ rejected the opinions of

1  those doctors based on incorrect legal standards. *Id.* Second, plaintiff argues that the ALJ erred in
2  failing to credit plaintiff's own testimony, or in rejecting it based on incorrect legal standards. *Id.*
3  Third, plaintiff contends that the VE's testimony was inconsistent with the DOT, and that the ALJ
4  committed reversible error in failing to resolve the conflict. *Id.* Finally, plaintiff contends that the
5  substantial erosion of plaintiff's occupational base requires a finding of disability. *Id.* at 18.

6  The Commissioner concedes that the ALJ committed reversible error by failing to
7  sufficiently explain why she departed from Dr. Flavin's opinion. Def.'s Cross-Mot. at 6.
8  However, the Commission argues that the ALJ properly discounted the opinions of Drs. Besana
9  and Cheng, as well as the plaintiff's subjective testimony. *Id.* at 3-4, 7-10. The Commissioner
10 also denies that there was any unresolved conflict between the VE's testimony and the DOT, and
11 that any such conflict would be harmless error. *Id.* at 11.

12 The Court will consider each of plaintiff's contentions in turn.

## I.   Discredited Medical Opinions

Courts distinguish among the opinions of three types of physicians: (1) treating physicians who have an established relationship with the claimant; (2) examining physicians who see the claimant, but do not treat her; and (3) non-examining physicians who neither examine, nor treat the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, the opinion of a treating physician should be given greater weight than that of an examining or non-examining physician. *Id.* Likewise, an examining physician's opinion is usually entitled to more weight than that of a physician who has not examined the claimant. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).

To reject the uncontradicted opinion of a treating or examining physician, the ALJ must provide clear and convincing reasons. *Lester*, 81 F.3d at 830. Even where an examining physician's opinion is contradicted by another doctor's opinion, an ALJ may not reject the opinion without "specific and legitimate reasons" that are supported by substantial evidence in the record. *Garrison*, 759 F.3d at 1012; *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (citing *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). "This is so because, even when contradicted, a

7

1    treating or examining physician's opinion is still owed deference and will often be 'entitled to the

2    greatest weight . . . even if it does not meet the test for controlling weight.'" *Garrison*, 759 F.3d at

3    1012 (quoting *Orn*, 495 F.3d at 633).

4          To satisfy the "substantial evidence" requirement, an ALJ must "set[] out a detailed and

5    thorough summary of the facts and conflicting clinical evidence, stat[e] his interpretation thereof,

6    and mak[e] findings." *Orn*, 495 F.3d at 632. Conclusory statements are insufficient; the ALJ

7    "must set forth her own interpretations and explain why they, rather than the doctors', are correct."

8    *Id.* An ALJ errs if she "does not explicitly reject a medical opinion or set forth specific legitimate

9    reasons for crediting one medical opinion over another[.]" *Garrison*, 759 F.3d at 1012-13.

10         For the reasons that follow, the Court finds that the ALJ committed reversible error in not

11   sufficiently supporting her rejection of the medical opinions of Drs. Flavin, Cheng, and Besana.

13   **A.     Dr. Flavin**

14         The Commissioner engaged Dr. Kara Flavin as a consultative examiner, and requested a

15   comprehensive orthopedic evaluation of plaintiff. *See* AR 252-253. After examining plaintiff, Dr.

16   Flavin stated: "From my assessment of this claimant I do feel that the conditions will impose

17   limitations for 12 continuous months." *Id.* 257. Specifically, Dr. Flavin found that plaintiff could

18   sit for a maximum of four hours because of neck pain and "facet arthropathy," and that the latter

19   condition limited plaintiff's maximum standing time to four hours. *Id.* Further, Dr. Flavin found

20   that plaintiff should only occasionally be involved in handling, fingering, or feeling because of her

21   hand pain. *Id.*

22         Dr. Flavin's opinion was the only one the ALJ afforded "great weight." *See id.* at 16-17.

23   However, the RFC posited by the ALJ found that plaintiff was capable of "sitting six hours in an

24   eight-hour day; standing and/or walking two hours in an eight-hour day; . . . [and] frequent

25   bilateral handling and fingering." *Id.* at 15. Contrary to the ALJ's statement that "the above [RFC]

26   assessment is supported by the opinion of [Dr. Flavin]," the assessment, in fact, is inconsistent

27   with the sitting and handling limitations that Dr. Flavin found. *See* AR at 19; 257. The ALJ

28   provided no reason for this apparent rejection of Dr. Flavin's opinion. *See id.* at 15-20. As the

8

Commissioner concedes, this is reversible error. Def.'s Cross-Mot. at 6.

Upon remand, the ALJ should incorporate the findings of Dr. Flavin in the RFC analysis, or reject the findings by providing a summary of the conflicting evidence, her interpretation thereof, and specific and legitimate reasons why her interpretation, rather than Dr. Flavin's, is correct. *See Orn*, 495 F.3d at 632.

### B.     Dr. Cheng

The ALJ considered two sources of medical evidence from a treating physician, Dr. Cheng. AR at 17-18. The first was a medical source statement in which Dr. Cheng opined that plaintiff is limited to lifting ten pounds occasionally, five pounds frequently, and occasional bending, stooping, and reaching. *Id.* at 17, 439. The second source was a check-box form indicating that plaintiff could not sustain sedentary work, that her ability to maintain a regular work schedule would be moderately limited, and that she would be severely impeded by interruptions from medically-based symptoms. *Id.* at 18, 501.

The ALJ rejected the findings contained in the first source because "their severity is not supported by the medical records and they are not consistent with other substantial evidence in the record." *Id.* at 17. She hypothesized that the "drastic difference" between the evidence and the findings "may be the possible result of sympathy for the patient or an effort to avoid unnecessary tension with the patient after a demand for supporting material has been made." *Id.* She further noted two pieces of evidence she felt were contrary to Dr. Cheng's findings: findings by Dr. Peter Boorstein, a treating physician, that plaintiff's symptoms were inconsistent with fibromyalgia, and the same doctor's finding of excellent range of motion in plaintiff's spine. *Id.* at 17, 605.

As an initial matter, the ALJ has attempted little more here than to identify conflicting evidence. This is insufficient. As noted above, the ALJ must not only identify the conflicting information, but provide her interpretation thereof, and explain why her interpretation, rather than the treating physician's, prevails. *See Orn*, 495 F.3d at 632. But there are further issues with the ALJ's rationale. For instance, Dr. Cheng himself stated that he did not believe plaintiff suffered from fibromyalgia. AR at 439. Thus, what the ALJ identified as contrary evidence actually

9

1  *supports* Dr. Cheng's findings. *See id.* at 17, 439. Further, it is true that Dr. Cheng noted that
2  plaintiff exhibited decreased range of motion during an exam, and that this contrasts with later
3  exams during which plaintiff had full range of motion, but the bare fact that the plaintiff had better
4  flexibility on one day than on another tells us nothing about the value of Dr. Cheng's medical
5  conclusions. *See id.* at 17, 439. The ALJ rejected the severity of the limitations found by Dr.
6  Cheng (i.e., lifting ten pounds occasionally, five pounds frequently, limited bending, reaching,
7  etc.) as inconsistent with the evidence. *See id.* at 17. Yet, the ALJ herself concluded that plaintiff
8  is limited to "lifting ten pounds occasionally, less than ten pounds frequently . . . [and] occasional
9  balancing, stooping, kneeling, crouching, and crawling[.]" The ALJ provides no explanation as to
10 why she rejects Dr. Cheng's findings as contradicted and unsupported, yet adopts substantially the
11 same limitations in her own RFC determination. As to the ALJ's sympathy hypothesis, the Court
12 has found no substantial evidence to support that claim.
13     The ALJ's rejection of the second piece of Dr. Cheng's medical evidence suffers from the
14 same problems noted above. *See id.* at 18. The ALJ has merely stated that the findings are
15 inconsistent with other clinical evidence, but fails to provide an interpretation of the evidence or
16 explain why those purportedly inconsistent findings are entitled to more weight than Dr. Cheng's.
17 *See id.* The only new ground offered to dismiss this piece of evidence is that it is "not the result of
18 an in-person examination and [is] contained in a form consisting largely of checked boxes without
19 further explanation." *Id.* This, too, is erroneous. The Ninth Circuit has held that check-box forms
20 that are based on significant experience with the claimant and supported by numerous records are
21 "entitled to weight that an otherwise unsupported and unexplained check-box form would not
22 merit." *Garrison*, 759 F.3d at 1013. Though the form here was perhaps not completed directly
23 following an in-person examination, Dr. Cheng had been treating the plaintiff for several months
24 before completing the form, and the notes from this course of treatment are contained in the
25 record. *See* AR at 429 (encounter on Sept. 26, 2011); *id.* at 438 (encounter on Oct. 18, 2011); *id.*
26 at 459 (encounter on Nov. 26, 2011); *id.* at 473 (encounter on Jan. 11, 2012); *id.* at 478 (encounter
27 on Feb. 1, 2012); *id.* at 482 (encounter on Feb. 15, 2012). Thus, it was error for the ALJ to
28 dismiss Dr. Cheng's findings because they were contained in a check-box form without further

explanation.

The Ninth Circuit has held that "the use of leading, hypothetical questions to elicit expert opinions is entirely appropriate." *Smolen*, 80 F.3d at 1288. Moreover, "[i]f the ALJ thought [s]he needed to know the basis of [Dr. Cheng's] opinions in order to evaluate them, [s]he had a duty to conduct an appropriate inquiry, for example, by subpoenaing the physician[] or submitting further questions to [him]." *Id.* (finding error in ALJ's discounting the testimony of a doctor whose opinions were contained in a check-box form without further explanation). The ALJ erred in failing to conduct any inquiry into the basis for Dr. Cheng's opinion, either by subpoenaing the doctor or by considering the documentary evidence already contained in the record.

Upon remand, the ALJ should reassess the weight afforded to Dr. Cheng's medical opinions, considering the documents contained in the record and/or subpoenaing whatever evidence she feels is necessary to properly evaluate the doctor's conclusions. *See id.* Should the ALJ again discount Dr. Cheng's opinions, she should first reassess the extent of any actual conflict between his opinions and those of other doctors, provide a summary of the evidence that contradicts Dr. Cheng, provide an interpretation thereof, and explain why that interpretation, rather than Dr. Cheng's, is correct. *See Orn*, 495 F.3d at 632.

### C. Dr. Besana

Like Dr. Cheng, treating physician Dr. Besana completed a check-box form indicating severe limitations of plaintiff's ability to work. AR at 496-99. The Court assumes that the ALJ dismissed these findings on the same grounds given for Dr. Cheng's. *See id.* at 18-19.[2] For the same reasons stated above, the Court finds the ALJ's reasons for rejecting Dr. Besana's findings

---

[2] The paragraph that discusses Dr. Besana's form does not mention the weight the ALJ attaches to the findings, or any contrary evidence. *See* AR at 18. Plaintiff contends that this means the ALJ gave no reason at all for rejecting Dr. Besana's opinion, but recognizes that the rationale the ALJ included in the paragraph discussing Cheng's opinions might also be seen as applying to Dr. Besana's opinion. Pl.'s Mot. at 12. The Court finds that plaintiff has the better reading. The ALJ reasoned that the findings "were not *the result* of *an* in-person examination and are contained in *a* form . . . ." (emphasis added). This language clearly refers to a single opinion: that of Dr. Cheng. However, the Court will give the ALJ the benefit of the doubt, and assume that she intended her reasons for rejecting Dr. Cheng's opinions to apply to Dr. Besana's.

11

insufficient. On remand, the ALJ should reassess the weight given to Dr. Besana's opinion in light of the extensive treatment history and documentary evidence in the record. *See Garrison*, 759 F.3d 1013.

## II. Plaintiff's Discredited Testimony

Plaintiff alleges that the ALJ improperly rejected her testimony regarding her impairment. Pl.'s Mot. at 18. The Commissioner argues that the ALJ provided "sufficiently specific, well-supported reasons for discounting the credibility of Plaintiff's subjective complaint." Def.'s Cross-Mot. at 7. For the reasons set forth below, the Court finds that the ALJ based her credibility determination on insufficient grounds.

An ALJ must engage in a two-step analysis to evaluate the credibility of a claimant regarding subjective symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). In the first step, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal quotation marks and citation omitted). "Second, if the claimant meets the first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id.*

The ALJ "may find the claimant's allegations of severity to be not credible" but "must specifically make findings which support this conclusion." *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991). In other words, "[t]he ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." *Smolen*, 80 F.3d at 1284. "These findings, properly supported by the record, must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Bunnell*, 947 F.2d at 345-46 (internal quotation marks and citation omitted). The ALJ may consider inconsistencies between a claimant's testimony and conduct, daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which

12

claimant complains. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002).

Here, the ALJ found in the first step that the "[plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms." AR at 18. The ALJ made no mention of malingering, and thus could reject the plaintiff's testimony only by offering specific, clear and convincing reasons. *See Lingenfelter*, 504 F.3d at 1036. As an initial matter, the ALJ never identified any specific testimony of the plaintiff that she found not credible. *See* AR at 18-19. The closest the ALJ came to providing a specific example was a general and cursory mention of plaintiff's "complaints of disabling symptoms." *See id.* at 18. Because the ALJ is required to cite specific testimony in order to discount it, this failure alone is reversible error. *See Smolen*, 80 F.3d at 1284. However, the Court will continue analysis of the ALJ's reasons for discrediting plaintiff's testimony to guide the ALJ's reassessment of plaintiff's credibility on remand.

The ALJ offered several grounds for discounting plaintiff's *general* testimony. First, she mentioned that plaintiff's daily activities do not accord with complaints of disabling symptoms. AR at 18. Second, she found that the objective evidence does not support the claimant's allegations, noting that one of the plaintiff's treating physicians remarked that he was "totally stumped as to why there was so much pain." *Id.* Third, the ALJ found that treatment has been successful in managing plaintiff's pain. *Id.* Finally, the ALJ found plaintiff's demeanor while testifying at the hearing to be "generally unpersuasive." *Id.* at 19. The Court will address each of these reasons in turn.

**A.     Daily Activities**

The Ninth Circuit has "repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain[.]" *Garrison*, 759 F.3d 995. "The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). "Disability claimants should not be penalized for attempting to

13

1    lead normal lives in the face of their limitations," and their daily activities only have bearing on
2    their credibility if the level of these activities is inconsistent with the alleged limitations.
3    *Garrison*, 759 F.3d at 1016 (quoting *Reddick*, 157 F.3d at 722). Here, the ALJ recognized that
4    plaintiff could vacuum, mop, and wash dishes only with frequent rest breaks. AR at 18. She
5    further noted that plaintiff prepares meals, does laundry, goes shopping, drives, and cares for a pet
6    dog. *Id.* What the ALJ does not provide is any explanation of how these activities—during which
7    plaintiff takes frequent breaks—contradict plaintiff's pain testimony. In fact, these limited
8    activities, punctuated by rest breaks, are consistent with plaintiff's allegation that she is unable to
9    sustain any substantial gainful activity. This factor thus provides insufficient reason to reject
10   plaintiff's testimony. *See Garrison*, 758 F.3d at 1015-16 (finding that a claimant's activities
11   including preparing meals, cleaning, caring for a child, with frequent rest breaks, did not
12   contradict testimony of disabling pain).

14   **B.    Lack of Objective Medical Evidence to Support Symptoms**

15   "In evaluating the credibility of pain testimony after a claimant produces objective medical
16   evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints
17   based solely on a lack of medical evidence to fully corroborate the alleged severity of pain."
18   *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005); *see also* 20 C.F.R. § 404.1529(c)(2).
19   However, the ALJ is permitted to consider the lack of evidence as one factor in the overall
20   credibility determination. *Id.* at 681.

21   Here, the ALJ relied on a normal MRI of plaintiff's brain and a resulting statement of a
22   treating physician that he was "totally stumped as to why so much pain out of proportion to exam
23   and findings." AR at 18, 603. The Court is not convinced that these facts provide clear and
24   convincing reasons to disbelieve plaintiff's pain testimony. *See Lingenfelter*, 504 F.3d at 1036
25   (holding that, in the absence of evidence of malingering, a plaintiff's pain testimony may be
26   rejected only by offering clear and convincing evidence for doing so). Plaintiff never contended
27   that she had brain abnormalities. The MRI was done at the request of the treating physician to
28   find a potential explanation for plaintiff's pain. *See* AR at 603. That the treating physician

14

subsequently admitted to being "stumped" proves little, as this concession says nothing about whether that physician disbelieved plaintiff's complaints of pain. Significantly, the physician continued to prescribe treatment for plaintiff's pain well after making the statement. *See id.* at 606 (referring plaintiff to another doctor for potential radiofrequency ablation one year after stating he was "stumped" about the cause of plaintiff's pain).

In light of the continued treatment, it is not at all clear, much less convincing, that either the MRI or the treating physician's statement casts doubt on plaintiff's pain testimony.

### C. Response to Treatment

A claimant's response to treatment is another factor that ALJs may consider in making an overall credibility determination. 20 C.F.R. § 404.1529(c)(3). Here, the ALJ made a general finding that "the record . . . reveals that the [plaintiff's] treatment has been generally successful in controlling [the plaintiff's] symptoms." AR at 18. She cited as support a report in which plaintiff's occupational therapist noted that plaintiff had decreased hand pain with use of a splint. *Id.* The Court finds that the ALJ's conclusion as to this factor is not supported by substantial evidence.

First, the finding only addresses the plaintiff's hand pain, and completely ignores plaintiff's complaints of pain in her neck and back. The ALJ thus failed in her duty to consider all of plaintiff's symptoms. *See* 20 C.F.R. § 404.1529(a). Second, even as to this single symptom, it is not obvious that the reported positive response to the splint supports an adverse credibility determination. Plaintiff acknowledged that the splint helps by immobilizing her joint. AR 34-35. However, this fact does not undermine the plaintiff's testimony that she suffers pain when she uses the joint. Additionally, the therapist himself recognized that plaintiff continued to have shooting pain, even after she started using the splint, yet noted a significant reduction in pain after plaintiff reduced her hours at work. *Id.* at 307, 321. By identifying only this evidence that is in any event consistent with plaintiff's allegations, the ALJ does not sufficiently specify "what evidence undermines claimant's complaints." *See Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001).

15

#### D.     Plaintiff's Demeanor at the Hearing

The ALJ stated that plaintiff's demeanor at the hearing was "generally unpersuasive" but emphasized that "this observation [was] only one among many being relied on in assessing credibility and is not determinative." AR at 19. The Commissioner insists, over plaintiff's objections, that an ALJ may permissibly consider such observations in assessing plaintiff's credibility. *See* Def.'s Cross-Mot. at 10; Pl.'s Mot. at 23.

The Commissioner relies on a Social Security Administration ruling stating that "the adjudicator may also consider his or her own recorded observations of the individual as part of the overall evaluation of the credibility of the individual's statements." Social Security Ruling ("SSR") 96-7p. However, that same ruling requires that an adverse credibility determination be "supported by the evidence in the record." *Id.* This makes clear the need for the ALJ's observations to be *recorded* if they are to be used against the claimant. *See id.* Unrecorded observations of a plaintiff's demeanor are necessarily without support in the record, and thus are an insufficient basis for an adverse credibility determination. *See id.*

On remand, the ALJ should identify the specific testimony she finds not credible, provide specific reasons for her determination, and support these reasons with specific evidence from the record.

### III.    The VE's Testimony

The plaintiff alleges that the VE's testimony was inconsistent with information in the DOT, and that the ALJ erred in relying on that testimony without first resolving the conflict. Pl.'s Mot. at 24-25. The Commissioner argues that the plaintiff has failed to identify any actual conflict between the VE's testimony and the DOT, and that the ALJ's failure to inquire about potential conflicts was harmless. *See* Def.'s Cross-Mot. at 11. The Court agrees with the Commissioner.

Before relying on the testimony of a VE, the ALJ has an affirmative responsibility to inquire whether the testimony conflicts with information provided in the DOT. *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007). If a conflict exists, the ALJ must determine whether the VE's explanation for departing from the DOT is reasonable, and "whether a sufficient basis

1   exists for relying on the expert rather than the [DOT]." *Id.* at 1153. Even if the ALJ fails to
2   conduct this inquiry, the error is harmless if there is no conflict or if the VE provided sufficient
3   support for her potentially conflicting testimony. *See id.* at 1154 n.19.

4         Here, the ALJ did not ask the VE whether any conflict existed between his testimony and
5   the DOT. *See* AR at 51-55. Responding to a hypothetical question about a person limited to
6   sedentary work, the VE stated that such a person could engage in work as a "cashier II," which the
7   DOT identifies as a light work. AR at 53; DOT 211.462-010. The VE acknowledged the
8   conflict, and stated that although "[t]he DOT classifies this job as light," he "believe[d] that there
9   are sedentary positions." AR at 53. He then eroded his estimation of the number of available jobs
10  to account for the sedentary restriction. *See id.* In her decision, the ALJ noted this erosion to
11  exclude light jobs. AR at 20. The Court is satisfied that the VE sufficiently justified his opinion,
12  and that the ALJ considered the conflict resolved in her opinion. *See Massachi*, 486 F.3d at 1153.
13  Accordingly, the ALJ's failure to ask about potential conflicts during the hearing was harmless
14  error.

## IV.   The Credit-As-True Doctrine

17        The plaintiff asserts that, if the improperly rejected evidence is credited as true, then a
18  finding of disability is warranted and that the proper remedy is remand for immediate payment of
19  benefits. Pl.'s Mot. at 12. The Commissioner argues that this Court should instead remand for
20  further proceedings, because there are multiple outstanding issues that must be resolved before
21  plaintiff could be found disabled. Def.'s Cross-Mot. at 6. For the reasons below, the Court finds
22  that the plaintiff's claim should be remanded for further administrative proceedings.

23        The Ninth Circuit has recently dispelled any doubts about the continued viability of the
24  credit-as-true doctrine. *See Garrison*, 759 F.3d at 999 (describing the credit-as-true doctrine as
25  "settled"). A court has the discretion to remand for payment of benefits where (1) the record has
26  been fully developed, and further administrative proceedings would serve no useful purpose; (2)
27  the ALJ has failed to provide sufficient reasons for rejecting the medical or subjective evidence;
28  and (3) the ALJ would be required to find the claimant disabled on remand if the improperly

1    rejected evidence were credited as true. *Id.* at 1020. Even where each of these conditions is met, the court retains discretion to remand for further proceedings where the record as a whole raises doubt over whether the claimant is, in fact, disabled. *Id.* at 1021.

While the credit-as-true doctrine remains viable in this circuit, there is conflicting authority on the particulars of its application. *Garrison* states that the third factor—whether the record requires a finding of disability if the rejected testimony is credited—incorporates the question of whether there are any outstanding issues that must be resolved before a determination of disability can be made. *See id.* at 1020 n.26. In other words, the inquiry is whether, *after* crediting the testimony, anything must be resolved in order to determine the claimant's disability. *See id.* A few months later, the Ninth Circuit held that a court must determine that there are no outstanding issues *before* crediting the rejected testimony. *Treichler v. Comm'r of Soc. Sec. Admin.*, No. 12-35944, 2014 WL 7332774, at *8 (9th Cir. Dec. 24, 2014).

The Court need not wade into this conflict; the outcome here is the same with either approach. While plaintiff's testimony and the opinions of Drs. Cheng and Besana would clearly establish disability if credited as true, the findings of Dr. Flavin conflict with plaintiff's testimony, and contain ambiguities that may conflict with the other doctors' findings. Specifically, Dr. Flavin found that plaintiff's maximum standing capacity was "four hours secondary to her facet arthropathy," and her maximum sitting capacity was "four hours secondary to myofascial neck pain and facet arthropathy." AR at 257. This clearly conflicts with plaintiff's testimony that she can only sit for thirty minutes, and stand for one hour. *See* AR 35-36.

Further, given that Dr. Flavin identifies the same symptom as limiting plaintiff's sitting and standing capacity, it is unclear whether her findings mean that plaintiff can either stand or sit for a total of four hours, or that plaintiff can stand and sit in alternation for a total of eight hours. In either case, because sedentary work is defined as requiring six hours of sitting per day, the four-hour sitting limitation makes Dr. Flavin's opinion consistent with the source statements of Drs. Cheng and Besana, which indicated that the plaintiff is incapable of sustaining sedentary work as therein defined. *See id.* at 496, 501. However, to the extent that Dr. Flavin's opinion can be interpreted as allowing plaintiff to alternate sitting and standing over an eight hour period, her

18

1  opinion is not clearly consistent with the source statements' indication that plaintiff would still be
2  limited if she could alternate sitting and standing. *See id.* at 497, 502.

3        It is apparent, then, that conflicts and ambiguities exist in the record, and that they would
4  persist even if the Court were to credit all of the improperly rejected testimony.  The Court has
5  found no authority suggesting that it has the discretion to credit only the rejected testimony that is
6  favorable to the plaintiff and to disregard what conflicts with it.  To the contrary, the Ninth Circuit
7  has been unequivocal that courts should "leave it to the ALJ to determine credibility, resolve
8  conflicts in the testimony, and resolve ambiguities in the record."  *Treichler*, 2014 WL 7332774, at
9  *6.  Accordingly, the Court finds it necessary to remand plaintiff's claim for further proceedings.
10 The ALJ should resolve the ambiguity in Dr. Flavin's findings and resolve any remaining conflicts
11 in the evidence.  Should the ALJ find that plaintiff can alternate sitting and standing over the
12 course of eight hours, it will be necessary to solicit further testimony from a VE in light of this
13 limitation.

14

15 **V.    Erosion of the Sedentary Occupational Base**

16       Finally, plaintiff argues that the VE testimony already on the record establishes disability
17 because plaintiff's limitations significantly erode the sedentary occupational base available to her.
18 Pl.'s Mot. at 15.  This argument is without merit.

19       Plaintiff relies on *Swenson v. Sullivan,* 876 F.2d 683 (9th Cir. 1989), to support her
20 position.  That case merely states that where a claimant has a significantly eroded occupational
21 base, the ALJ cannot rely exclusively on the Medical-Vocational Guidelines, but must take into
22 account the opinion of a vocational expert.  *Id.* at 688.  This point is consistent with the Social
23 Security Rulings plaintiff cites:  "Another situation where [vocational specialist] assistance is
24 advisable is where an individual's exertional RFC does not coincide with the full range of
25 sedentary work," SSR 83-12; "[T]he ability to do even a limited range of sedentary work does not
26 in itself establish disability in all individuals, although a finding of 'disabled' *usually* applies when
27 the full range of sedentary work is significantly eroded . . . ." SSR 96-9p (emphasis added).
28 Whether or not a finding of disability *usually* applies, neither the Medical-Vocational Guidelines

19

nor any Social Security Ruling *require* a finding of disability. No authority plaintiff has cited counsels against remand for further proceedings in this case.

## CONCLUSION

For the foregoing reasons, the Court REVERSES the decision of the Commissioner and REMANDS this case pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Order.

**IT IS SO ORDERED**.

Dated: March 3, 2015

SUSAN ILLSTON
United States District Judge